**COPY OF SUMMONS**

## SUPERIOR COURT OF CLAYTON COUNTY

### STATE OF GEORGIA

Herbert W. Perkins
_____
                    Plaintiff

_____
                    Address

_____

VS.

Michael C. Thrasher
_____
                    Defendant

_____
                    Address

_____

CASE NUMBER _2014CV00702-9_

SUMMONS

_February_ Term, 20 _14_

CALENDAR DATES

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:   Cary S. Wiggins, Wiggins Law Group
260 Peachtree St., NW, Suite 401
Atlanta, GA 30303
(404) 659-2880; cary@wigginslawgroup.com

an answer to the complaint which is herewith served upon you, **within 30 days** after service of this summons, upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Jacquline D. Wills
Clerk of Court
Superior Court Division

By _Gail L. Davis_
Deputy Clerk

COPY OF SUMMONS.wpd                                                        01/01/11



IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

HERBERT W. PERKINS,          *
                            *
        Plaintiff,          *        CIVIL ACTION FILE
                            *
vs.                         *        NO. _2014CV00702-9_
                            *
MICHAEL C. THRASHER,        *
individually,               *
                            *        JURY TRIAL DEMANDED
        Defendant.          *

## COMPLAINT

## NATURE OF THE CASE

1.

This civil action concerns the unlawful seizure, detention and prosecution of Herbert Perkins by Sergeant Michael Thrasher of the Clayton County Police Department. Perkins seeks monetary damages, attorney's fees, costs and a trial by jury.

## PARTIES

2.

Plaintiff Herbert Perkins ("Herbert") is a resident of Clayton County, Georgia.

3.

Defendant Michael C. Thrasher is a Sergeant for the Clayton County Police Department, who was acting under color of state law at all times relevant to the allegations of this complaint. Sgt. Thrasher resides in the State of

Georgia, and he is sued in his individual capacity.

<u>VENUE</u>

4.

All acts or omissions alleged in this complaint occurred in Clayton County, Georgia, and therefore venue is proper.

<u>JURISDICTION</u>

5.

The Court has jurisdiction over Sgt. Thrasher and the subject matter of this complaint.

<u>FACTS</u>

6.

Herbert is a 62-year old black male.  His primary car at all relevant times has been a 2004 Kia Sorento.

7.

Herbert has been married to Patricia Perkins ("Patricia") for 31 years.  Patricia worked for the Georgia State Patrol for over 22 years before eventually accepting a position with the Clayton County Police Department ("CCPD"), where she now works.

8.

While working at CCPD, Patricia's primary car has always been a customized 2003 Chevrolet Silverado truck (the "Chevy").  Patricia drives the Chevy to work, and it is

recognized by many who know and work with her at CCPD headquarters.

9.

In the early morning of March 7, 2012, Herbert drove Patricia's Chevy to the dealership's service shop to follow-up on a transmission replacement.  Patricia drove Herbert's Kia to her job at CCPD on that day.

10.

On that morning, Patricia did not drive straight to CCPD headquarters.  Instead she went to the Clayton County Commissioner's office, where she attended an award ceremony and in fact received an award for employee professional development.

11.

When the service check was completed, Herbert drove Patricia's Chevy to CCPD to leave it and pick up his car, the Kia.

12.

At around 9:00 a.m., Herbert entered the parking lot at CCPD's headquarters.  He parked where Patricia normally and lawfully parks, which is along a curb (as the four-ton truck does not easily fit into a painted parking space).  She had parked the Chevy in the same spot for at least two years.

13.

This parking lot is routinely used by the public for business at the CCPD headquarters.  (The police do not tow or ticket the public for using this parking lot.)

14.

After parking, Herbert got out of the Chevy and began to walk around the parking lot, assuming that he would find his Kia.  That morning Herbert was wearing a winter coat with a fur-collar hood; the hood was down.

15.

Sgt. Thrasher, a white male, was visiting the CCPD headquarters that morning.  Upon exiting the building, he saw Herbert in the parking lot and decided to monitor him.

16.

After walking around the full parking lot for several minutes looking for the Kia, Herbert could not find his car. So he called Patricia while standing in the parking lot, but she did not answer her phone.

17.

By this time, although Sgt. Thrasher had reached his patrol car, he did not leave but continued to watch Herbert from inside his car.

18.

Unable to find his Kia or contact Patricia, Herbert went back to the Chevy.  He assumed that Patricia was still

at the awards ceremony.  He started the engine and began to
leave the parking lot.

19.

At that point, Herbert had done nothing wrong and
certainly had not done anything to arouse a reasonably well-
trained law enforcement officer to suspect that Herbert had
violated any local, state or federal law.

20.

Yet, just as Herbert was trying to exit the CCPD
parking lot, Sgt. Thrasher drove his patrol car towards the
Chevy and blocked it from leaving.

21.

Sgt. Thrasher stepped out of his car and ordered
Herbert to stop.  Herbert stopped immediately.  Sgt.
Thrasher then told Herbert to return the Chevy to the curb
where he had initially parked.  Herbert did as told.

22.

Herbert did not understand what, if anything, he had
done wrong, but nonetheless remained calm and obeyed Sgt.
Thrasher's commands.

23.

Sgt. Thrasher told Herbert that he needed to provide a
lawful explanation for why he was walking around the CCPD's
parking lot.

24.

Herbert explained to Sgt. Thrasher that he was looking for his Kia, and that his wife, Patricia, worked in the CCPD headquarters.

25.

Sgt. Thrasher did not believe Herbert.

26.

Although Sgt. Thrasher made no effort to confirm that Herbert's wife worked at headquarters, he did run Herbert's name or license plate through GCIC or DMV (or both) and learned that Herbert had a gun permit.

27.

Sgt. Thrasher then ordered Herbert out of the Chevy.

28.

Herbert complied and, as instructed, placed his hands atop the front door of the Chevy so that Sgt. Thrasher could pat him down. At that point, Herbert had done nothing wrong and certainly had not done anything to arouse a reasonably well-trained law enforcement officer to suspect that Herbert had violated any local, state or federal law.

29.

Sgt. Thrasher began a "Terry pat down" and Herbert cooperated. Herbert posed no immediate threat to the safety of Sgt. Thrasher or others. Herbert did not resist this pat

down in any fashion whatsoever until Thrasher hit or smacked Herbert in the groin, which caused Herbert to jerk.

30.

Upon information and belief, Sgt. Thrasher intended to use enough force against Herbert's groin area to evoke a physical reaction. Herbert's reaction was enough, so Sgt. Thrasher thought, to perform a leg sweep on Herbert and throw him to the pavement.

31.

Sgt. Thrasher ordered Herbert to place hands behind back. Herbert complied while asking what he had done to be arrested.

32.

Herbert was handcuffed and placed in Sgt. Thrasher's patrol car. Other CCPD police officers arrived at the scene and searched the Chevy.

33.

About this time, Patricia arrived (in the Kia) to find her husband in Sgt. Thrasher's patrol car. Patricia told Sgt. Thrasher that Herbert was simply trying to swap cars. Yet the detention continued.

34.

At some point, Patricia explained that Herbert was diabetic, and Sgt. Thrasher called for an EMT. The EMT

arrived and checked Herbert's blood sugar level which was within a normal range for an average person, but low for Herbert.

35.

The police found no contraband or guns in the Chevy, and the Chevy was turned over to Patricia that morning.

36.

Sgt. Thrasher took Herbert to jail.

37.

Sgt. Thrasher, under oath, executed a warrantless arrest probable cause affidavit. In his affidavit, Sgt. Thrasher swore that Herbert was "loitering around the parking lot of the Clayton County Police Headquarters, while looking in and around police vehicles, which were parked in the marked employee parking area of the lot." This was false. Herbert was neither loitering nor looking in police vehicles, and Sgt. Thrasher knew this fact.

38.

In that affidavit, Sgt. Thrasher also swore: "When I made contact with [Herbert], he refused to give me a lawful reason for being in the employee lot. Instead, he became agitated and began yelling at me." This was false. Hebert maintained his composure despite the unreasonable seizure undertaken by Sgt. Thrasher.

39.

In that affidavit, Sgt. Thrasher also swore that he ordered Herbert out of the Chevy "so that he could conduct a 'Terry pat down' for weapons," which is true, but then Sgt. Thrasher swore that "while patting [Herbert] down, he pulled away from me and spun around to face me, now refusing to be patted down. I then assisted him to the ground where he was placed under arrest, for obstructing my law enforcement duty."  That statement was false and deliberately misleading because Sgt. Thrasher omitted that he had smacked Herbert in the groin, which prompted the reaction.  He also lied when stating that Herbert refused to be patted down after the hit to the groin.  He is correct that Herbert was taken to the ground after reacting to the hit of the groin.

40.

In that affidavit, Sgt. Thrasher concluded by swearing that "the loitering charge is still being investigated." That allegation is true, but Sgt. Thrasher had no basis for stating that after talking with Patricia and confirming that Herbert was in the parking lot to swap cars with his wife.

41.

At no point in tendering the warrantless arrest affidavit did Sgt. Thrasher inform the magistrate judge about Patricia or her relationship to Herbert.  Nor did Sgt.

Thrasher explain that Hebert complained about the "Terry pat down" because Sgt. Thrasher had smacked Herbert in the groin.  Nothing in the affidavit supports an arguable, reasonable suspicion to have detained Herbert in the first place.

42.

Also in his affidavit, Sgt. Thrasher asked that Herbert "be held in the common jail of Clayton County unless otherwise having posted Bond or having been released by a Judge of the Magistrate Court of Clayton County."

43.

Once in her husband was in jail, Patricia tried to deliver diabetes medication to Herbert, but the jail staff explained to Patricia that medication could be provided only by jail staff.

44.

Herbert did not receive diabetes medication until about 5:00 a.m. the next morning.  Following Herbert's arrest and incarceration, it took about one week for Herbert to stabilize his blood sugar level.

45.

On March 28, 2012, based on Sgt. Thrasher's untrue testimony, the State drafted an accusation against Herbert, alleging the offense of "obstructing an officer" in that

Herbert "did knowingly and willfully obstruct and hinder Sgt. C. Thrasher a law enforcement officer, in the lawful discharge of his official duties by resisting arrest."

46.

Herbert was forced to hire a criminal defense attorney and appear in court.

47.

On July 25, 2012, based on Sgt. Thrasher's untrue testimony, the State amended its accusation against Herbert, alleging the offense of "disorderly conduct" in that Herbert "did act in a violent and tumultuous manner toward another person whereby that person, to wit: Sgt. C. Thrasher, is placed in reasonable fear of the safety of such person's life, limb or health."

48.

On July 26, 2012, based on Sgt. Thrasher's untrue testimony, the State again amended its accusation against Herbert, alleging an additional count of "obstructing an officer" in that Herbert "did knowingly and willfully obstruct and hinder Sgt. C. Thrasher a law enforcement officer, in the lawful discharge of his official duties by lying to him."

49.

In the July 26 accusation, and again based on Sgt.

Thrasher's untrue testimony, the State added a fourth count against Herbert, alleging "loitering or prowling" in that Herbert was at the police headquarters "at a time and in a manner which was unusual for law-abiding individuals to be present at said location, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons and property in the vicinity."

50.

All four counts in the July 26, 2012 accusation were based on a fabricated version of the events that occurred on the morning of March 7, 2012.

51.

At Herbert's criminal trial, Sgt. Thrasher knowingly gave false testimony in an attempt to convict Herbert for the alleged crimes.

52.

Herbert was acquitted on all counts following a jury trial that concluded on August 29, 2012.

53.

As a direct and proximate cause of this unlawful arrest, detention and prosecution, Herbert has experienced pain and suffering, extreme emotional distress, anxiety, humiliation, and outrage.

COUNT 1

42 U.S.C. § 1983: False Arrest / Unlawful Seizure

in violation of the Fourth Amendment

54.

Herbert incorporates paragraphs 1 through 53 here by this reference.

55.

Based upon his experience, knowledge and training as a law enforcement officer, Sgt. Thrasher knew that no arguable probable cause, much less probable cause, existed to believe that Herbert committed a crime on March 7, 2012.

56.

An objectively reasonable law enforcement officer in Sgt. Thrasher's position would have known that no arguable probable cause existed to arrest Herbert.

57.

At all times relevant to this action, the law was established with obvious clarity that arresting a citizen without arguable probable cause and depriving a citizen of his liberty violates the Fourth Amendment to the United States Constitution and the Georgia Constitution (Art. I, § 1, ¶¶ I & XIII).

58.

As a direct and proximate cause of Sgt. Thrasher's acts

and omissions, Herbert was seized and detained against his will, entitling his to compensatory, punitive and nominal damages in an amount to be determined by the enlightened conscience of the jury.

<u>COUNT 2</u>

42 U.S.C. § 1983: Malicious Prosecution
in violation of the Fourth Amendment

59.

Herbert incorporates paragraphs 1 through 53 here by this reference.

60.

Sgt. Thrasher initiated a criminal prosecution against Herbert for violating Georgia's statutes covering obstruction, disorderly conduct, and loitering, and he knew or should have known that no arguable probable cause existed to believe that Herbert had violated these Georgia statutes or committed any crime recognized by law.

61.

Sgt. Thrasher initiated the arrest and maintained the prosecution of Herbert by including false or reckless statements and making material omissions in his affidavit supporting Herbert's arrest, thus displaying malice and a reckless disregard for Herbert's civil rights.

62.

The arrest and prosecution forced Herbert to appear in Clayton County State Court numerous times on his criminal case.

63.

This criminal prosecution terminated favorably for Herbert.

64.

At all times relevant to this action, the law was established with obvious clarity that arresting a citizen without arguable probable cause and depriving a citizen of his liberty violates the Fourth Amendment to the United States Constitution and the Georgia Constitution (Art. I, § 1, ¶ I).

65.

As a result of this prosecution, Herbert suffered emotional, mental and financial injury, entitling him to recover nominal, compensatory and punitive damages against the defendants in an amount to be determined by the enlightened conscience of the jury.

COUNT 3

42 U.S.C. § 1983: Excessive Force

in violation of the Fourth Amendment

66.

Herbert incorporates paragraphs 1 through 53 here by this reference.

67.

Sgt. Thrasher maliciously, intentionally and with deliberate indifference deprived Herbert of his rights, privileges and immunities secured by the United States Constitution, specifically, the rights secured by the Fourth and Fourteenth Amendment and its laws under 42 U.S.C. § 1983 to be free from the use of excessive force.

68.

At all times relevant to this action, the law was established with obvious clarity that using force against a citizen without arguable probable cause to believe that the citizen committed or was committing a crime deprives that citizen of his liberty violates the Fourth Amendment to the United States Constitution and the Georgia Constitution (Art. I, § 1, ¶ I).

69.

As a result of this excessive use of force, Herbert suffered emotional, mental and financial injury, entitling him to recover nominal, compensatory and punitive damages against the defendants in an amount to be determined by the enlightened conscience of the jury.

<u>COUNT 4</u>

O.C.G.A. § 51-7-1: Malicious Arrest

70.

Herbert incorporates paragraphs 1 through 53 here by this reference.

71.

Sgt. Thrasher initiated a criminal prosecution against Herbert for violating Georgia's statutes covering obstruction, disorderly conduct, and loitering, and he knew or should have known that no arguable probable cause existed to believe that Herbert had violated these Georgia statutes or committed any crime recognized by law.

72.

Sgt. Thrasher initiated the arrest and prosecution of Herbert with malice, as interpreted under Georgia law.

73.

This criminal prosecution terminated favorably for Herbert.

74.

As a result of the arrest, Herbert has suffered emotional, mental and financial injury, entitling him to recover nominal, compensatory and punitive damages against Sgt. Thrasher for the loss of his rights under this claim, in an amount to be determined by the enlightened conscience

of the jury.

<u>COUNT 5</u>

O.C.G.A. § 51-7-40: Malicious Prosecution

75.

Herbert incorporates paragraphs 1 through 53 here by this reference.

76.

Sgt. Thrasher initiated and maintained a criminal prosecution against Herbert for violating Georgia's statutes covering obstruction, disorderly conduct, and loitering, and he knew or should have known that no arguable probable cause existed to believe that Herbert had violated these Georgia statutes or committed any crime recognized by law.

77.

Sgt. Thrasher initiated and maintained the arrest and prosecution of Herbert with malice, as interpreted under Georgia law.

78.

This criminal prosecution terminated favorably for Herbert.

79.

As a result of the arrest, Herbert has suffered emotional, mental and financial injury, entitling him to recover nominal, compensatory and punitive damages against

Sgt. Thrasher for the loss of his rights under this claim, in an amount to be determined by the enlightened conscience of the jury.

<u>COUNT 6</u>

O.C.G.A. § 51-7-20: False Imprisonment

80.

Herbert incorporates paragraphs 1 through 53 here by this reference.

81.

On January 15, 2012, Sgt. Thrasher unlawfully detained Herbert against his will, depriving him of personal liberty.

82.

The detention of Herbert was unlawful because it was not predicated on any process and no exigent circumstances existed to justify Sgt. Thrasher's conduct.

83.

There would not have been a failure of justice had Sgt. Thrasher permitted Herbert to sign the citation and appear in court as Sgt. Thrasher had initally elected to do.

84.

As a result of his unlawful detention, Herbert has suffered emotional, mental and financial injury, entitling him to recover compensatory and punitive damages against Sgt. Thrasher for the loss of his rights under this claim,

in an amount to be determined by the enlightened conscience
of the jury.

COUNT 7

Punitive Damages

85.

Herbert incorporates paragraphs 1 through 53 here by
this reference.

86.

Sgt. Thrasher's actions described in this complaint
displayed a want of care showing a conscious indifference to
consequences as contemplated under O.C.G.A. § 51-12-5.1.

COUNT 8

O.C.G.A. § 13-6-11: Attorney's Fees

87.

Herbert incorporates paragraphs 1 through 53 here by
this reference.

88.

By his acts and omissions specified above, as well as
other conduct, Sgt. Thrasher has acted in bad faith, has
been stubbornly litigious and has caused Herbert unnecessary
trouble and expense.

89.

Herbert is entitled to recover his actual expenses of
litigation, including attorney's fees, from Sgt. Thrasher.

WHEREFORE, Herbert respectfully requests the following relief:

(a)   That as to Counts 1, 2, 3, 4, 5 and 6, the Court award Herbert compensatory, punitive (see also Count 7), and nominal damages against Sgt. Thrasher in an amount to be determined by the enlightened conscience of an impartial jury;

(b)   That the Court grant the Herbert his reasonable costs and attorney's fees in bringing this action in an amount to be determined at trial;

(d)   That Herbert be granted a trial by jury on all issues so triable; and

(e)   That Herbert be granted such other and further relief as this Court deems just and proper.

Respectfully submitted,

WIGGINS LAW GROUP

BY: _____
Cary S. Wiggins
Ga. Bar No. 757657

Suite 401
260 Peachtree Street, NW
Atlanta, Georgia 30303
Telephone:   (404) 659-2880
Facsimile:   (404) 659-3272
www.wigginslawgroup.com